## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

QUEENS HOSPITALITY, LLC, a Florida
limited liability company

                    Plaintiff,            Case No._____

        against

BREAKFAST BITCH, LLC, a California limited
liability company

                    Defendants.

_____/

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
## AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 65, and other applicable law, Plaintiff Queens Hospitality, LLC ("Queens"), by and through its undersigned counsel, respectfully moves the Court for entry of a preliminary injunction against Defendant Breakfast Bitch, LLC ("Defendant"). As grounds for this Motion, Queens sets forth below an incorporated Memorandum of Law.

## MEMORANDUM OF LAW

**I.**      **INTRODUCTION.**

This action arises out of Defendant's unlawful attempt to enhance its business by, among other things, (i) unlawfully imitating Queens' business model and intellectual property so as to deceive potential customers into believing that Defendant produced such intellectual property; (ii) unlawfully reproducing or otherwise copying Queens' registered intellectual property and applying such to Defendant's advertisements so as to deceive potential customers into believing that Defendant produced such intellectual property; (iii) wrongfully trading upon Queens' goodwill and brand loyalty; (iv) unlawfully using a combination of words on its business materials so as to deceive potential customers into believing that Defendant produced the combination of words for such use; and (iv) tarnishing Queens' unique business reputation.

As a result of Defendant's tortious acts, Queens has a substantial likelihood of success on the merits of the following claims: (i) Federal Trademark Infringement under 15 U.S.C. § 1114; (ii) Trademark Infringement under Florida Statutes, Section 495.131; (iii) Federal Unfair Competition under 15 U.S.C. § 1125(a); and Unfair Competition under Florida Statutes, Section 501.201.

## II.      FACTUAL BACKGROUND.

### Queens and its Business

At least as early as 2016, Queens has owned its restaurant under the name "Bacon Bitch," and the registered Trademark "BACON BITCH" and variations thereof, including U.S. Registration No. 5666197 in connection with restaurant services and fast food services. Bacon Bitch, which is located in Miami Beach, Florida, provides a unique twist on comfort food, offering a wide array of brunch style options. In one post on Queens' website ("Bacon Bitch Website"), Queens writes that "Bacon Bitch **seamlessly combines this comfort food staple** with the highest quality ingredients and freshly baked artisanal croissants for a truly delectable and

one of a kind meal." *See* <u>Exhibit A</u>. Bacon Bitch has experienced dramatic success since its inception in 2016 and continues to work on its expansion throughout the United States.

On the menu at Bacon Bitch, the restaurant uses the following phrases to identify the entrees it offers: (i) primary entrees are identified under the heading "Main Bitch," (ii) side items are identified under the heading "Side Bitch," (iii) add-on items are identified under the heading "Extra Bitch," and (iv) alcoholic beverages are identified under the heading "Drunk Bitch." *See* <u>Exhibit B</u>. To protect its intellectual property rights in this unique menu, Queens registered the menu with the United States Copyright Offices (**Case No. 1-7768301031**).

<u>**Defendant's Unlawful Practices**</u>

Defendant was registered as a California limited liability company with the California Secretary of State on May 22, 2019. According to Defendant's website ("Breakfast Bitch Website"), which is operated from the internet domain www.eatbreakfastbitch.com, Defendant is scheduled to open its restaurant, "Breakfast Bitch," on July 13, 2019 in San Diego, California.

On the Breakfast Bitch Website, Defendant has previously posted content with a description of its business model that directly mimics that of Bacon Bitch. Significantly, without providing direct credit to Bacon Bitch, that same website post even noted Defendant's inspiration for Breakfast Bitch, writing that Breakfast Bitch was "**inspired by one of the hippest spots in Miami**." *See* <u>Exhibit C</u>. Moreover, the proposed menu at Breakfast Bitch posted to the Breakfast Bitch Website by Defendant is a copy of Bacon Bitch, uses almost exact recipes, but most notably the similarities in identifying the entrees: (i) primary entrees are identified under the heading "Main Bitch," (ii) side items are identified under the heading "Side Bitch," (iii) add-on items are identified under the heading "Extra Bitch," and (iv) alcoholic beverages are identified under the heading "Thirsty Bitch." *See* <u>Exhibit D</u>. In response these various aggravating

circumstances and similarities, Queens notified Defendant that its current operations were in violation of Queens' intellectual property rights and attempted to amicably resolve this matter.

**Evidence of Actual Confusion**

Defendant currently maintains a page for Breakfast Bitch on the popular business review website, yelp.com ("Yelp"). Upon Defendant attempting to register the Breakfast Bitch Yelp page, the Yelp restaurant specialist assigned to the registration expressed concern that a page for this restaurant was already maintained. As a result of this confusion, the Yelp representative was forced to directly contact Queens to confirm that the page was somehow related to Bacon Bitch or otherwise affiliated with Queens. To reiterate, an expert in the industry of identifying restaurants was affirmatively confused the Breakfast Bitch was in some way affiliated with Bacon Bitch. *See* Exhibit E. There is no speculation as to consumer confusion as evidenced by their own Instagram comments where consumers inquire as to whether Breakfast Bitch is in some way related to Bacon Bitch. *See* Exhibit F.

**III.    LEGAL AUTHORITY FOR RELIEF.**

To obtain a preliminary injunction, a movant must establish: (1) a substantial likelihood of success on the merits of its claims, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) that the threatened injury to the movant outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would not disserve the public interest. *See* Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003). As set forth below, Queens satisfies all four of these elements and is thus entitled to a preliminary injunction entered against Defendant.

**1.    Queens Has a Substantial Likelihood of Success on the Merits of Its Claims.**

Queens has a substantial likelihood of success on the merits of its claims. First, under Section 32 of the Lanham Act, a person is liable for **trademark infringement** for:

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]

15 U.S.C. § 1114.

In order to prevail on a federal trademark infringement claim, a plaintiff must demonstrate that (1) its marks had priority over defendant's marks, and (2) defendant's marks were likely to cause consumer confusion. *See* Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc., 830 F.3d 1242, 1255 (11th Cir. 2016).

Queens has a substantial likelihood of success on the merits of its claim for trademark infringement under the Lanham Act. Defendant has violated Section 43(a) by, among other acts, using Queens' intellectual property or a colorable imitation thereof in commerce in connection with Defendant's restaurant business, which is likely to cause confusion, to cause mistake, or to deceive. *See* Exhibit F. Indeed, such use Defendant of Queens' overall business model has already caused confusion among restaurant industry experts. *See* Exhibit E.

Moreover, the Lanham Act also provides a cause of action for **unfair competition**. In relevant part, Section 43(a) of the Lanham Act provides:

> (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Generally, to prevail on a federal claim of unfair competition under § 43(a), a trademark owner "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1346 (11th Cir. 2012). Section 43(a) of the Lanham Act is nearly identical to the above-discussed likelihood of confusion standard, but "is broader … in that it covers false advertising or description whether or not it involves trademark infringement." Fla. Int'l Univ. Bd. of Trustees, 830 F.3d at 1265 (citing Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1181 (11th Cir. 1994)). The standards for Florida common law trademark infringement are the same as the federal standards. See Rain Bird Corp. v. Taylor, 665 F.supp.2d 1258, 1267 (N.D. Fla. 2009).

Queens has a substantial likelihood of success on the merits of its claim for trademark infringement under the Lanham Act. Defendant has violated Section 43(a) by, among other acts, using Queens' intellectual property or a colorable imitation thereof in commerce in connection with Defendant's restaurant business, which is likely to cause confusion, to cause mistake, or to deceive.

Given Defendant's refusal to cease using Queens' intellectual property, Defendant is willfully infringing Queens' rights under the Lanham Act and other applicable law. Defendant's flagrant and continuing use of Queens intellectual property is unauthorized and has already caused actual confusion among both consumers and industry experts. Under these circumstances, there is a substantial likelihood that Queens will prevail on its claims for trademark infringement and unfair competition under the Lanham Act, and a preliminary injunction is warranted to avoid further irreparable injury to Queens.

    **2.  Queens Has Suffered and Will Continue to Suffer Immediate Irreparable Injury Unless an Injunction is Entered.**

Queens will suffer irreparable injury if the court does not issue a preliminary injunction because the consumer confusion that will result from Defendant opening its restaurant on July 13, 2019 as scheduled will continue to cause customers to believe that Defendant's restaurant is, at a minimum, affiliated with or sponsored by Queens. Since at least as early as 2016, Queens has spent considerable time and revenue developing its brand, advertising its Marks, and promoting the good will of its name. Queens is at risk of having its reputation in the restaurant and hospitality community significantly damaged by Defendant continuing its current operations.

Not only have Defendant's actions already tarnished Queens' business, but there is no possible way to quantify the irreparable damage and harm that Queens will experience at the hand of Defendant actions and resulting customer confusion. *See* McDonald's Corp. v. Robertson, 147 F.3d 1301, l307 (11th Cir. 1998) (finding that there is no conceivable way to calculate money damages under such circumstances).

Unless Defendant is immediately enjoined from using the Queens' Marks and distinct characteristics of Queens' business, additional consumers will undoubtedly be confused, and Queens will suffer further irreparable harm.

3. **The Threated Injury to Queens Clearly Outweighs the Potential Damage to Defendant.**

The hardship that will flow to Queens clearly outweighs any potential damage to Defendant. Queens will undoubtedly continue to suffer unquantifiable damage if Defendant is permitted to further use Queens' Marks and trade dress. In the absence of a preliminary injunction entered against Defendant, Queens will continue to suffer incalculable costs, and Defendant will certainly continue to unfairly ride the coat tails of Queens' good will.

On the other hand, Defendant would experience hardly any substantive harm or potential damage as a result of this injunction. To the extent that Defendant suffers any financial harm based on the expenses incurred in delaying its grand opening, a defendant traditionally is required to bear the impact of any harm caused by its own wrongdoing. *See* Telestrata, LLC v. NetTALK.com, Inc., 126 F. Supp. 3d 1344, 1355 (S.D. Fla. 2015) (citing Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 596 (3d Cir. 2002) ("[I]n considering the potential harm to a non-movant, a court may discount potential harm that would arise due to the actions of the non-movant.).

Furthermore, Queens is not in any way seeking to preclude Defendant from lawfully advertising and engaging in the restaurant and hospitality business from across the country. Queens only seeks only to enjoin Defendant from engaging in such business by using Queens' valuable intellectual property. Accordingly, the balance of the harm favors the Court entering a preliminary injunction.

4. **The Public Interest Favors Granting the Requested Injunction.**

The public interest will be served by the Court enjoining Defendant from continuing its current practices. As a result of the preliminary injunction, the consuming public will no longer be misled by Defendant's business. In a trademark or unfair competition action such as the

present, the court has noted that "the public is entitled to be free from deception and confusion." Laboratorios Roldan c. por A. v. Tex Int'l, Inc., 902 F.Supp. 1555, 1570 (S.D. Fla. 1995). As noted above, Defendant's menu, name, and business practices have continually misled consumers into believing that Defendant's business is somehow affiliated with or sponsored by Queens. As such, enjoining Defendant's further distribution of the identical intellectual property of Queens would not disserve the public interest.

## IV.     CONCLUSION

Queens respectfully requests that this Court enter a preliminary injunction, whereby enjoining Defendant from using Bacon Bitch's intellectual property including the menu titles and Breakfast Bitch name and requiring Defendant to issue corrective advertising sufficient to dispel the ongoing harmful effects to Queens and for any further relief deemed just and proper by this Court including reasonable attorney's fees.

Dated: July 12, 2019.

Respectfully submitted,

*/s/ Brenda J. Schamy*
Brenda J. Schamy, Esq.

DiSchino & Schamy, PLLC
4770 Biscayne Blvd., Suite 1280
Miami, Florida 33137
Telephone: (786) 581-2542
brenda@dsmiami.com
(Attorney for Plaintiff)

EXHIBIT A

Inspired by the classic New York breakfast dish - Bacon Egg & Cheese, **Bacon Bitch** seamlessly combines this comfort food staple with the highest quality ingredients and freshly baked artisanal croissants for a truly delectable and one of a kind meal. No longer just for breakfast, bacon is *more* than food... it's an *experience*.

**Bacon** *Bitch*. Come get a mouthful.

**Hours:** Friday- Monday 8:00am- 3:00am

Tuesday-Wednesday 8:00am-6:00pm

**Location:** 860 Collins Ave, Miami Beach, FL 33139

**Phone:** 305-900-7371

## EXHIBIT B

### MAIN BITCH

| | | |
|---|---|---|
| **COUNTRY** $10<br>Sausage Gravy. Turkey sausage.<br>Egg | **QUEENS** $10<br>Nueske's Bacon, Egg, Sharp<br>Cheddar Cheese | **CUBAN** $12<br>Chicharrans, Mojo Pork, Swiss,<br>Nueske's Bacon, Pickles, Pickled<br>Red Cabbage. Yellow mustard |
| **AMERICAN** $12<br>Hash Brown, Nueske's Bacon, Egg.<br>Syrup | **FIT** $10<br>Hummus, Tomato, Cucumber, Egg<br>White | **PHILLY** $13<br>Strip Steak. Portobello Mushrooms<br>Caramelized onions, Spicy Nacho<br>Cheese |
| **FANCY** $15<br>Lobster, Nueske's Bacon Bits. Dijon<br>Hollandaise. Spinach. Egg | **BACON** $10<br>Nueske's Bacon. Tomato Jam.<br>Spinach, texas Pete Aioli | |



### SIDE BITCH

| | | |
|---|---|---|
| **FRESH** $4<br>Fresh Croissants | **SWEET** $6<br>Croissant, chocolate Ganache.<br>Nueske's Bacon Bits | **FLUFFY** $7<br>Homemade Silver Dollar Buttermilk<br>Pancakes. candied bacon Bits.<br>Syrup |
| **ORIGINAL** $8<br>Nueske's bacon. Syrup | **CHUNKY** $5<br>Homemade Chocolate Chunk<br>Cookie With Gooey Chocolate<br>Center | |
| **CRISPY** $6<br>Seasoned Homemade Hash Brown | | |



### EXTRA BITCH

Menu – Breakfast Bitch

| | | | | | |
|---|---|---|---|---|---|
| **Strip steak** | $4 | **Egg/Egg White** | $2 | **Bacon Bits** | $3 |
| **Tomato Jam** | $2 | **Mojo Pork** | $3 | **Cheese** | $2 |
| **Lobster** | $6 | **Turkey Sausage** | $3 | | |

11

EXHIBIT C

Welcome to

# **Breakfast Bitch**

Situated in the Hillcrest district of San Diego, Breakfast Bitch is an exciting new concept founded in 2019 by Tracii & Derrell Hutsona.

Inspired by one of the hippest spots in Miami, Breakfast Bitch seamlessly combines comfort food and make your own pancakes at your table with a hip and playful vibe featuring a one of a kind experience. Come thru for good food, good fun, and good music.

Stop in and Griddle your own pancakes, choose a yummy croissant breakfast sandwich or something light from our  Skinny Bitch menu. Hang our at Tipsy Bitch for BOTTOMLESS Mimosas or try our signature Bloody Bitch.

| | |
|---|---|
| Monday-Saturday | 8AM-2PM |
| Sunday DJ Brunch | 8AM-3:30PM |
| After Hours Friday and Saturday | 1AM-4AM |

Stay Tuned for our GRAND OPENING in SPRING 2019

EXHIBIT D



Menu

## A Bitch GottaEat...

**MAIN BITCH**

Southern .............................. 10.00
(sausage gravy, turkey sausage & egg)

All American ..................... 12.00
(Hashbrowns, Nueske's Bacon, egg & syrup)

Bougie ................................ 15.00
(Lobster, Nueske's Bacon bits, Dijon hollandaise, spinach & egg)

Brooklyn ............................. 11.00
(Neuski's Bacon, egg & Sharp cheese)

Daygo ................................. 13.00
(strip steak, portabello mushrooms, spicy nacho cheese)

Pop's Shrimp & Grits........13.00

**BASIC BITCH**

Make your own cakes.......... 10.00
(pitcher of pancake batter, strawberries, banannas, powdered sugar, chocolate chips)

Simple .............................. 10.00
(hashbrowns, egg & turkey gravy)

Easy.................................. 10.00
(strip steak, egg, dijon hollandaise)

**SIDE BITCH**

Flaky Croissant............ 10.00

Crispy Hash Browns ............................... 5.00

Chocolate & Bacon Croissant ....................... 6.00

Chocolate Chip Cookie........ 5.00

**THIRSTY BITCH**

Box of Water ............................ 2.00

Orangina ....................... 4.00

Pineapple Mango ........................... 4.50

Italian Sodas ........................... 5.00

French Milled Lemonade ................................ 4.50

EXHIBIT E

AFFIDAVIT FROM YELP EMPLOYEE

**Breakfast Bitch**
1 message

**Tron** <nyctrizzle@gmail.com>
To: Santronya Smith <nyctrizzle@gmail.com>

Fri, Jul 12, 2019 at 11:09 AI

In the beginning of March when I was employed as an Inbound Sales Rep at Yelp I received a call from Tracy asking for information about creating a new Yelp listing for a new restaurant in San Diego. I went to the website to collect the information I needed and the menu looked identical to a menu I had seen on another account "Bacon Bitch" the menu looked exactly the same to me right down to the price point  I asked Traci if she was familiar with Bacon Bitch and if she knew Chris Visio who was the owner. She told me she didn't know Chris but she was familiar with Bacon Bitch because she went there with her husband when they first opened and had such a great time that they decided to do something similar. She then told me that her concept was different because they added a table side pancake bar.

Santronya Smith
224.616.1316

EXHIBIT F

INSTAGRAM CONSUMER CONFUSION

< **Comments** ▽

**xock_** @breakfastbitch_sd will do.
19w   1 like   Reply   ♡

**taylereatseverything** 👍🏻
19w   1 like   Reply   ♡

**amandavsfood** Are y'all related to bacon bitch in Miami??
18w   1 like   Reply   ♡

**amandavsfood** @breakfastbitch_sd I need to stop by soon!
18w   Reply   ♡

**breakfastbitch_sd** @amandavsfood Bacon Bitch Miami is awesome! We are not related to them at all!
15w   Reply   ♡

**sandiego_diary** 😎😎
18w   Reply   ♡

**brinsonbarbara59** @breakfastbitch_sd will make a visit Friday especially 4 bloody mary. Hope taste as good as photo looks 😄😄
13w   Reply   ♡

15